All rise. Oh yes, oh yes, oh yes. The Iowa Public Court, 5th District, the State of Illinois is now in session. Please be seated. Good morning. First case is Smith v. Stone. Counsel? The issue here is an evidentiary one. Terry Smith, plaintiff, tried to cross the street and was hit by a car driven by Rose Stone. The testimony about Terry's conduct prior to him being hit by the car driven by Rose Stone was basically his testimony and his landlord's testimony. His landlord testified that Terry had called her, asked her for a ride to come home, to go, but she came near the location, wasn't sure where he was, called him again, and Terry then gave her directions as to how to get to where he was. When he saw her car, he tried to walk over to where it was and got hit by the car driven by Rose Stone. Rose Stone testified that she was traveling 20 miles an hour or less than that and did not ever see him. Nobody testified about any contact on the part of Terry Smith prior to the collision that indicated he was in any way intoxicated. As a result of the accident, he was taken to the hospital. Dr. Curry, the ER doctor, smelled the odor of alcohol in his bed. He's not sure if he smelled it or what happened, but he did do blood work and Terry had an outrageously high blood alcohol level in his blood. But the law in Illinois always is now and always has been that evidence of intoxication is inadmissible unless, evidence of consumption of liquor, I'm sorry, is inadmissible unless there's proof of intoxication and there has to be some basis in the record to get to the intoxication rather than the inadmissible. As a result, what happened here is the trial court allowed the defense to work backwards. The blood alcohol level was high and therefore he probably was drunk and therefore the foundation requirement, that is conduct on his part indicating that he had consumed alcohol, was ignored. It never, ever, ever existed in this case. That error was compounded by the testimony of Dr. Wong. Dr. Wong was an eminently qualified toxicologist who testified in this case not about Terry Smith but about the average person with a blood alcohol level of 0.37. But according to Dr. Wong, Terry should have been incontinent bowel and bladder. He should have been a stupor. He shouldn't have been able to walk or move. He shouldn't have been able to think or function. None of that was true. None of that was true concerning Terry at the time of the accident or before the accident. Then Dr. Smith was, Dr. Wong was allowed to buttress his testimony by the use of a learned treatise. The law is awfully clear on that, that learned treatises cannot be used to buttress testimony and that learned treatises are in themselves hearsay. In this case the Dabowski chart was introduced into evidence. The Dabowski chart was used by Dr. Wong's testimony and all the terrible things that would have happened to a normal person with a blood alcohol level of 0.37 was given to the jury in spite of the fact that none of that, Dr. Wong's testimony was he would be in stupor. Terry wasn't. They couldn't walk. Terry could walk. That he would be incontinent bowel and bladder. Not there. They couldn't use his cognitive abilities in any way. Terry called his landlord for a ride and then called her and she called him back and gave her directions about how to get to where he was. Clear cut use of all of his cognitive abilities at the time. And then in that area it was compounded by the instructions to the jury. Dr. Wong talked about, for example, in his testimony he talked about the L.Y. vehicle code and the presumption of intoxication. Didn't have anything to do with this case at all. Terry was a pedestrian. He talked about what might have happened if he had taken the field's ride to it. Never took the field's ride to it. Then the instructions talked about what happens when one's intoxicated. I mean, the trial judge was overwhelmed by the 0.37 blood alcohol. The defense wants you to be overwhelmed by that as well. What about the plaintiff's own testimony? Plaintiff's own testimony went, Judge. Okay, when you left the bar were you sober? No, sir. Were you intoxicated? Yes, sir. That was over objection and there's nothing. Obviously, if that testimony goes down, obviously we lose. But you can't get to that. You can't ask that question under a law unless there's some evidence of intoxication before that time. There was none. What in the record, Judge, shows that he was intoxicated before the question was asked? He was walking down the street. You're asking me a question? I guess you're not going to just check. The record doesn't show anything at all on that point. You don't have to worry about that. Just look at the blood alcohol. I mean, that shows that according to everybody else he's intoxicated. But blood alcohol content is evidence of intoxication. It's evidence of it. People who have tolerance to alcohol can drink a whole lot of it and not be affected by it because of their long use. But you don't get to ask the question about were you intoxicated had you had any drink unless there's something in the record showing that he was stumbling, he couldn't walk, he was slurring his words, he couldn't function properly. It's not there, Judge. Mrs. Stone couldn't give it to him. She couldn't put that in the record. It didn't exist with the only other person that talked to him that night is his landlady. And so, yeah, that testimony indicates he was intoxicated and opens the door to get the .37 in. But it can't be asked unless there's something else there first. So you were saying, Mr. Womack, that it had no effect on him. How can you say that? You said that he drank apparently an amount that could kill somebody, which I think everybody knows. But you said this had no effect on him. I'm saying there's no evidence of the effect on him in the record. He walked out of the bar. He had enough sense to decide that he couldn't walk. But does that in any way show one way or the other that his thinking was impaired to some degree or that his physical abilities were impaired to some extent? No. There's nothing there. The only testimony in the record before the blood alcohol test is that he walks out of the bar, doesn't stumble or fall, that he's not in a stupor, that he doesn't slur his words. He called on his cell phone and talked to his landlady. She came to pick him up. She could understand him. No slurring of the words, nothing like that in the record at that point in time. She gets close, not sure where she is. She calls him again. He gives her specific directions as to how to get to where he is. Then he walks out to where he sees her car and gets hit. Did he see the lights? Did he hear the lights of the other car? His testimony was that he never saw it. Can that be considered at all? We know she was there. We know she was there. It's a fact that she was there in proximity because she struck him. So can that be considered and why not? I'm sure you don't believe it should be considered as a sign of his impairment that he walked essentially in front of a moving car. No, I think clearly that's evidence of a trip to a negligence, but it's not evidence of intoxication. People walk out in the street all the time without looking. People dart out without looking. Well, he said he looked though. I believe he said he looked, didn't he? I haven't looked at the record, but I thought I saw it in one of the briefs that he looked and he did not see. I think that's evidence of trip to a negligence, but how many hundreds of cases have you guys seen here where people walk into the street and get hit and are not intoxicated? That's not evidence of intoxication. The judge was wrong and I think he was overwhelmed by this point. I mean, the guy leaves the bar. Is that enough? The fact that he walks out of the bar, is that enough to say he's intoxicated? I don't think the law says that. So you're saying that unless there's some observation of some physical evidence of impairment by someone, regardless of the fact that it's over the top BAC, and there is testimony that that is over the top and would impair everybody, I think is what Long says, that cannot be considered unless there is this observation. The issue is very simple. The law says you can't even ask the question about consumption of alcohol unless you have evidence of intoxication. Before you ask the question. The point that Judge Wexton raised was after we get there. He walks out of the bar, uses his telephone, walks across the street, talks to his landlady on the phone. He calls her back on the phone. He says, well, I can't use my cell phone. I'm always sober. I don't drink. He's much better than I am at it. He gives the landlady directions about how to get there. There's nothing in the record that says, okay, now we can talk about him being drunk. And then they try to buttress the testimony by the ER doctor. The ER doctor based his opinion. It didn't seem simple or false, only on the level. And Dr. Long's testimony is not admissible. You can't talk in general about a specific case. His testimony about Terry was that Terry should have been in a stupor, should have been vomiting, should have been incontinent bowel and bladder, should have been unable to function at all. And yet the facts were the exact opposite. Except that I agree with that, except that he also said everyone would be impaired. Most people would be dead or comatose, but everyone would be impaired. But impaired is entirely different than being intoxicated. Impaired is entirely different than being totally drunk. And we're not talking about driving a vehicle. We're talking about a pedestrian. What is the standard for a pedestrian? How much can a pedestrian drink before he's allowed to walk? Dr. Long didn't touch that at all. His testimony was basically the same as it would have been in a drunk driving case. And this was a drunk walking case. And he took the generalities of his knowledge and applied them to the specifics of Terry's case when the specifics totally contradicted that. He said nobody would be able to function, would be able to have any cognitive powers. Terry did. Terry called on the phone. He talked on the phone. He gave directions. Did he walk past the car? Did he go to the part of the car and go that time or did he go right in the middle of the lottery? There's not really a corner there. He walked across the street. He did not cross at a pedestrian right of way location, but there was one anywhere around. The bar is sort of in the middle of the street. There's a lot of stuff on the other side. There's no walkway, no designated walkway to my memory. I don't recall a pedestrian walkway being there. He walked into the street. He walked in front of the car. He got hit. He was guilty of contributory negligence. But there's no evidence before that that shows that he was a toxic. No, I don't have a question. I thought there was one case and I can't find it right now. Marshall, where the blood alcohol was allowed in? Yes, that's the case that we're looking for. And that case is, first of all, I think the case is wrong because it does the same thing you're trying to hear. It backs into the decision, but there were other evidence, other factors there. It was a dark night. You couldn't see. There was a strange location on the roadway. Lots of other things present other than what we have here. Here we've got a bar across the street. There's a lot of activity going around, lights everywhere. None of those factors apply. What makes that different? I'm sorry? What about those facts? The Marshall court, I think incorrectly, inferred from the facts surrounding the accident that the person had to be intoxicated or this wouldn't have happened. I don't think you can make that same conclusion from the facts of this case. They describe how you address that. In Marshall, there was no description as to how the deceased was walking before the accident. The circumstances, visibility, visibility was a problem in the Walker case. I'm sorry, in the Marshall case. I think the court there concluded that because he was trying to walk across the street in this area where the visibility was bad, that was an indication that he was intoxicated. I think that's wrong, but even if you apply those facts to our case, Terry walked in front of a car and got hit by it. The two issues exist there, how fast the car was coming or whether he could or couldn't see it, whether he was in some way blinded by the lights or distracted by what was going on around him. You have hundreds of cases in this court every year where people walk into a street and get hit. I don't believe there's anything in this record showing that how he walked indicated that he was intoxicated. If that's true, then in every case, every case where there's an accident, you can commit blood alcohol. Here, the blood alcohol level was run because of the care for the patient. He wasn't a driver, so they weren't trying to find out if he was driving intoxicated, and it was there to provide care for him. But he had consumed a lot of alcohol, but the consumption of the alcohol that he consumed, there's no evidence that that had any effect on him at all. I know what Dr. Long says, but everything else Dr. Long says is wrong, too. He says he couldn't possibly have any cognitive abilities, couldn't function, and yet he did. He said all these other things about him, none of which were true. Back to the question that Judge Wexton asked about his, I guess essentially an admission, I still don't quite understand how you say that that, it's not that he said, well, I've been drinking, but he said I think he used the word intoxicated. How can you keep that out? Well, you can't keep it out because you can't ask the question. You can't ask that question. I filed a motion to limit it, which was denied. I raised it again. I made an objection to that testimony and made a standing objection. So the question cannot be asked of him. At that point, unless there's – it would be the same as asking me now if I've been drinking. There's no – well, that's probably not a good point. Maybe I look like I have. But in Terry's case, there was no evidence to indicate that he had been drinking that night. So there's no basis for Mr. Brand to be able to ask that question in the first place. And so that question is asked over my objection, over my request for an eliminating order, and over my standing objection on that issue. You can ask that question in discovery, but you can't ask it at trial. And if he had admitted that in discovery, then could it have been asked at trial? No. You're saying it's the same application. Yes. Discovery allows you to ask questions that are not admissible at trial. But isn't the whole idea of keeping out evidence of drinking to prevent prejudice if somebody isn't intoxicated? And if he admits he is intoxicated, doesn't that then do away with that idea of prejudice? I think the – if you heard Terry's – recall Terry's testimony, he was trying to describe how he thought he felt, what effect it had on him. And he didn't say he was drunk. I think he said, I'm not saying that I wasn't intoxicated. But it's in a discovery deposition, and the idea is to keep out the effect of prejudice, period. If you hear that he – if you hear that he had a beer, that would prejudice some jurors. If you hear that he's got a .37 blood alcohol level, it affects everybody. It affects you. It affects Judge Wexin. It affects Judge Cohn. That's a lot of – that's a high level. And so – I'm sorry. But the fact that he says, I'm intoxicated, that's – I don't understand how you get around that as an admission that, in fact, he is, and therefore there's no prejudice from the innuendo or the insinuation that somebody perhaps is intoxicated when they aren't. Because he – the issue should never have been raised in the first place. The motion should have been granted. The objection to that question should have been sustained. You can't ask him if he's intoxicated. If he walks straight, if he doesn't swear his word, if he can function mentally, there's nothing there that allows you to ask that question. It's improper to ask that question. And then on top of that, you get overwhelming evidence, in spite by Dr. Wong, about how he probably was more drunk, more effective than he looked like. And here's this chart. This chart is submitted in evidence. And Vince made this argument that it was a monster. That clearly was not a monster. This went to prove that Jerry was so drunk that his drunkenness caused the accident. And that should never have been allowed to – they should never have been allowed to get to that point. Thank you. Thank you. Please, Court. Mr. Wong. We have some fundamental disagreements that we need to get out of the way to begin with. First of all, the Dabrowski chart was never admitted into evidence. It was used only as a demonstrative exhibit. And I think if you look at the record, you'll find that to be true. Dr. Wong also did not testify about Field sobriety test and motor vehicle code. That was taken out by the trial judge as being improper. The unredacted transcript you have from Attorney Wong does have at the very last page the rulings on the objections. But you're reading an unredacted transcript. So let's begin with putting up those misconceptions. The facts in this case that the plaintiff is intoxicated are overwhelming. He's in a bar. He's there for four hours. He drinks until he runs out of money. And only then does he leave. That's when he encounters my client when he walks from behind, lied beside, directly into the path of her oncoming car, driving approximately 20 miles per hour with her headlights on. His first step into the street, by his own testimony, is when he gets hit. And that's the facts of this case. I want to talk first about his admission. I think there's some misconception here. I think Mr. Wong is part of what an admission is. I understand admission to be a statement made under oath or in court by a person, a witness, a party, that contains something that's in the way of admission. Now, if you're in a discovery deposition and you're asked the question, were you intoxicated? And you answer that question, yes, I was intoxicated. And I believe that becomes an admission. And then you can later use that in the trial. There's nothing magical about a question being asked in discovery. And it's not an admission if you admit to a fact in discovery, and it later becomes admitted in the trial. And in this case— Is there a case that says if you admit something in discovery, it's admissible in trial, when it's prejudicial to the plaintiff's case? I don't have one to quote to the court. But I think that it stands to reason that if you're making those admissions, you're bound by the admissions that you make. There was no objection in discovery when the question was asked. But there are four ways to establish intoxication. One is by direct testimony. And the first thing we have is a testimony of the plaintiff in this case. And I think it's there, it's out there. And he said what he said. He said, were you intoxicated? Yes. He admitted that. But there's more than that. There's also a request to admit fact in this case, to which the plaintiff responded with admissions. And if you look at it, Your Honors, he basically admits that he spent the time in the bar, that he had several beers and several rum and Cokes mixed drinks before the accident. He also admits that when his blood alcohol was drawn less than an hour later, that the blood reading was .37. Now those are requests to admit facts which are admitted by the plaintiff. He also testifies circumstantially about what happened here. So I think we have, first of all, the plaintiff's own testimony and his request to admit, which establishes intoxication. But there's one more thing. Circumstantially is also a late proof of intoxication. And we've cited before cases where the erratic behavior of the plaintiff was found by the court to be an indication of intoxication. And in one of the cases, the person only had one drink. I think it may have been a tequila sonar or something. I don't know what that is. But that coupled with the erratic behavior, which was, in that case, failing to swerve to go around the fallen bicycles, the court allowed the testimony. In the other case that we cited before where the fellow was driving down the road, he, for some reason, crosses two lanes of traffic, or on one strip, hits another car head-on, that coupled with five beers was enough to bring in evidence of intoxication. So what do we have circumstantially about this plaintiff? Well, first of all, we have his admission. When he was asked, and this question was asked, and it was allowed by the court without objection, could you walk straight along? Now that's an indication of whether or not you could be intoxicated. Remember what he said? I ain't going to say all that. That's what the jury heard. They had a chance to weigh that, considering whether or not that was erratic behavior or an erratic statement about his behavior that would indicate intoxication. But what else do we have here? We have this fellow. He comes out of the bar, middle of being there for four hours. He didn't come out until he's spent all his money. He's behind the white sign. He looks. There's no obstructions whatsoever to his vision. The car's coming at about 20 miles per hour with its head blocks on. He said, I didn't see the car. How close was the car? The car was so close, when he takes his first step into the street, he is hit. The car is there. He doesn't see it. That's an example of his impairment. That's an example of his erratic behavior. One of the things Dr. Long talks about is the visual problems you have when you drink so much. Now this guy, Mr. Long's friend, he's apparently an experienced drinker. He has some tolerance for alcohol and maybe can do things that an average person can't do. But no one, according to Dr. Long, and by the way, we both endorse Dr. Long. He is a well-qualified forensic toxicologist, testified in hundreds of cases, has testified in cases involving this sort. In all his years of experience, based on everything he knows, no one, including the pointer, can have a .37 and not be intoxicated and not be impaired. And if the court would recall, sometimes they're trying to teach kids about the dangers of alcohol. They have them wear these goggles to try to show them what happens when you've been drinking. One of the things you do is you have trouble seeing things. In this case, this plaintiff stepped directly in the path of an oncoming car with headlights on. He said he never saw. This becomes a jury question. The jury has the right to hear this testimony, to weigh the testimony, and then the jury decides what weight to give to it. Okay, so we have direct testimony of the plaintiff as to his intoxication. I think that testimony should have been excluded, but the blood alcohol... What testimony is that, Your Honor? I'm sorry? His own testimony. He can't be asked that question. I think the trial court may have made an error there, but I'm not sure it's an error that's reversible when we have the blood alcohol at .37. Would you agree with that? Even if that evidence should have been excluded, wasn't there sufficient evidence from the physician on the .37? I believe there was. I'd like to try to understand. What testimony do you think should have been excluded? His own testimony. His own admission. In his testimony? Yeah. Not being in the law of the street? No, his own testimony that he was intoxicated. That should not have been admitted. All right. That's the next point, then. In addition to having, I'm going to call it the admissions by the plaintiff, for what they were, the erratic behavior, the circumstantial evidence, which is documented in the case law, we now have the medical testimony. We have Dr. Craig Furry. He's been down in southern Illinois working ERs for 20 years. He did not remember this particular case, which is understandable considering the number of cases that he sees. But what he did know, there was something about looking at this fellow, the way he was acting, to let him believe he needed to do a blood alcohol test. And that's in his testimony. He did. It comes back .37. Remember, he and I had this little quarrel about  I think that's just a matter of grammar. But that's what he found him to be. And he also pointed out that that was demonstrating his behavior. We also have Dr. Jan Marsh, excuse me, Jan Goldman Marsh, who is the one who admits him to the hospital. She records in the hospital admission that he is confused and drunk. They also talk about him being non-responsive there. She even brings out the point that when they do the glossal coma scale, I remember Attorney Wolk had a little problem about that, about what he scored on that and what it meant. Mr. Wolk, of course, is attributing his problems to his head injury. He said, no, he didn't have a head injury. He was pretty much normal, except there was a slight variation in the glossal coma scale, which led her to believe that that was an indice of his intoxication. So you have medical testimony as to his intoxication. Mr. Brandon, I should have asked Mr. Wolk, what were his injuries? Because I didn't really get a very clear picture. He was remarkably lucky. He fell to the ground. He had a Y-shaped blast brace on the back of his head, which was thrown by way of five staples, and that pretty much was the extent of his injuries. Was he knocked unconscious, or did he have a concussion or any head injury? He was not unconscious. There was no diagnosis of concussion, and no one was sure that he had a concussion. He was kept in the hospital overnight for observation. He stayed two extra days due to his withdrawal problems from alcohol, and Dr. Marsh testified about that. That wasn't a really serious issue in the trial, but that medical was allowed in about his two extra days' stay in the hospital. We also now have the testimony of Dr. Long, and Dr. Long, I think, is a well-qualified expert. Dr. Long testified about people in general using the Grabowski chart. He also testified about this fellow using his height 5'6", his weight 160, and factoring in his calculations. Dr. Long talked about the impact of alcohol, how it impairs you, and what the level of intoxication should be. The fact this guy could walk and talk, the way he got in front of a car, does not establish he was not intoxicated. What it does establish, due to the way he acted and the way he walked and talked, he was definitely impaired. And I think under the circumstances here, the evidence is simply overwhelming that he was intoxicated. If you put it all together, you have his own statements for what they were. You have medical testimony. Within an hour after the accident, his blood alcohol was still on the reset. I want to make a distinction. I don't think Mr. Womack is actually saying he wasn't intoxicated. I think he's saying that you can't get to the proof of whether or not he's intoxicated because there wasn't any visually obvious evidence beforehand. Let's talk about that just for a minute. Talk about the Marshall case. The Marshall case is a clear example of what can happen in a case like this. What was known to the jury in that case and what was known to both the trial court and the military court, the deceit, the plaintiff's deceit, is found dead on the roadway. He's been struck by the defendant's oncoming car, and all they have there is it's a dark night. It is a foggy night, I believe. He's dead on the highway, but he has a blood alcohol of 0.32. Based on that, those facts, the court found that his behavior, being on the roadway, the blood alcohol of 0.32, was sufficient evidence to go to the jury. As a matter of fact, the verdict was for the defendant. It was sustained on appeal. That's all that was there. What can happen if a plaintiff simply says in a case involving a plaintiff's deceit, the deceit is found dead after an accident. No one has seen the deceit you can come up with, and yet the deceit when his blood alcohol is wrong is above some level. Say he's just a pedestrian, not a driver, and it's 0.32 or 0.37 like in this case. Do you know what that evidence is? The fact that he has behaved erratically when walking on the roadway and getting hit by a car, but there's no evidence of his intoxication coming in? Marshall says he wants that evidence in, and I think Marshall is the correct decision in this case. Regarding the instructions, I think there was enough evidence to give those instructions. They should have been given and were given. They had to do with the statutory violations. The jury considers that along with the other evidence to decide whether or not it applies. We had an argument about whether or not he constituted a hazard, certainly to himself. Certainly he did. He steps out on the street, he's hit. There's also an issue as to whether or not he suddenly left a place of safety and walked into the street. Obviously he did. The first step into the street, he's hit by a vehicle. I think in this case, the evidence was properly admitted. It was overwhelming. The jury had the right to weigh this. They did it. Mr. Womack never put a witness on about this tolerance, so all they had was some cross-examination. I don't think Judge Barr was overwhelmed. He's been on the bench a number of years. I've tried a number of cases before. I mean, as Attorney Womack, he may be a lot of things, but overwhelmed is not one of them. I think he had the opportunity, before making his ruling, to hear the questions from women, to read the depositions, to cleanse them for objection. So he was well-versed in what the evidence was in this case. And at the end of the day, he affirmed the jury's award, and I think this court should also. A couple of things Mr. Grant said I strongly disagree with. He said there was no objection to the question asked by Terry about his intoxication and discovery. Of course that's true. There's a huge difference between what's discoverable and what's admissible. It would have been foolhardy of me to object to, in a discovery deposition, object to something that is clearly discoverable. But the, and I agree with the statement that I think Judge Wixson indicated, but I think it should go farther than that. You can't, this case was lost as soon as the .37 was read to the jury, and as soon as they saw that chart and heard the testimony, the case should have been decided on the facts of the case, how he walked, what he did, what he didn't do, and of course, and yes, Judge Leier was overwhelmed by it, and I think you are too. That's a high level of alcohol consumption, high blood alcohol, no question about that. Am I correct in saying that you're not denying the intoxication, you're just saying the jury shouldn't have been able to know about that? Yes, ma'am. Okay. It boils down to a very simple question. We have rules of evidence, and they ought to be followed. We have rules of evidence, and the violation of those ought to have consequences. So you're essentially telling us that we should disregard Marshall? Absolutely. Marshall's wrong, but look at Marshall. There was a rule area. I have, I've read it. A rule area out in the dark, nobody anywhere around. This guy is in a, there are people all over that street. The testimony was lots of activity in the street in question. It was, you can't, I don't believe you can say that because the accident happened, he therefore was more likely than not intoxicated. And I think the statement that they were, they are admissions. We answered their request to admit, honestly, because those were the facts. That doesn't mean those facts are admissible. You still have to show the foundation before you can ask those questions. And in this case, the foundation was ignored, and I think in Marshall it was ignored, because they knew the result. I think Dr. Goldman testified that he was suffering from M's. What about, is it Dr. Marsh? She was one of the ER docs? No. She was a treating doctor. She's a hospitalist. Okay. And somehow I maybe missed that. Mr. Brandon said that she stated he was confused and drunk. Yes. But she said that she didn't see him that night. She saw him the following day. He was having malaria and tremendous the following day. Okay. And he talks, he talked about what Dr. Long said. He said he admitted there was no field sobriety test. There was no nystigma. Nystigma was the exam. He talked about all his cases involved driving. He said he had no cognitive abilities, couldn't function cognitively. I asked him a question. When he called someone to have someone pick him up, did that indicate he was able to use cognitive reasoning? And he says, not cognitive reasoning, but rather a rote test. I asked him a question. A phone call to ask somebody to pick you up is a rote? The answer, Donald, the phone is a rote. Making a decision to call, is that an indication of ability to use cognitive functioning? The answer is yes. He talked about the reliance on Dr. Furry. And Dr. Furry never saw the man stand, walk, move, anything at all. He saw him in the hospital with a head injury. Terry's testimony was he had no memory of what happened after he got hit on the head. That's an indication of the existence of a concussion. He did have a head injury. He did have to have it fixed. And nobody there at the hospital saw him doing anything. So you've got a man who walks out of a bar. Is that enough? Walking out of a bar? I've walked out of lots of bars in my life, and I've never had a drink inside one of them yet. He walks out of a bar, walks over to the street, looks. He says, maybe he didn't look, and gets hit by a car. Is that enough to raise the issue of intoxication? And I don't think the law is to that stage yet. If it is, it shouldn't be. The questions that were asked, we worked backwards. We got .37, and then we've got delirium tremens, and therefore we know he had to be drunk, and that's not correct. You can't raise the issue unless you have something in the record. And Judge Wexler indicated that it may have been air, but perhaps not reversible air. It is the whole issue of this lawsuit. The only reason that we're here today is because the jury heard this overwhelming testimony about not just having a drink or two, just not being able to walk straight, but being in a stupor, being unable to function properly. In this case, I don't believe it's fair to say that this did not have a result on the decision by the jury. Of course it did, and therefore it should be reversible. Thank you. Thank you, nurse. That's the case that's been asked, and we'll get you guys as soon as we can. Thank you, nurse. Thank you.